CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 22 2014

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOANN RAKES CALLAWAY, | ) |
| | ) Civil Action No. 7:13CV00287 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) By:  Hon. Glen E. Conrad |
| | )      Chief United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Joann Rakes Callaway, was born on September 4, 1971, and eventually completed the tenth grade in school. Mrs. Callaway has worked as an off bearer for a plywood and veneer manufacturer. She last worked in 2009. In October of 2010, plaintiff filed applications for disability insurance benefits and supplemental security income benefits. She alleged that she became disabled for all forms of substantial gainful employment on September 18, 2009 due to musculoskeletal problems; residuals of a discectomy; blindness in her left eye; anxiety; and depression. Plaintiff now maintains that she has remained disabled to the present time. As to her

application for disability insurance benefits, the record reveals that Mrs. Callaway met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See generally, 42 U.S.C. §§ 416(i) and 423(a).

Mrs. Callaway's applications were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated June 7, 2012, the Law Judge also determined that plaintiff is not disabled. The Law Judge found that plaintiff experiences several severe impairments, including degenerative disc disease of the lumbar spine with radiculopathy, status post discectomy; blindness of the left eye; and shoulder pain. Because of these impairments, the Law Judge held that Mrs. Callaway is disabled for her past relevant work activity. However, the Law Judge ruled that plaintiff retains sufficient functional capacity to perform a limited range of sedentary work activity. The Law Judge assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) as follows: lift and carry 10 pounds frequently and 20 pounds occasionally with frequent operation of foot controls; stand and/or walk 4 hours of an 8-hour workday; sit for 6 hours of an 8-hour workday; occasional balancing, stooping, crouching, crawling and climbing of ramps of [sic] stairs; frequent reaching in all directions; avoidance of concentrated exposure to hazards; and frequent far acuity, depth perception and color vision.

(TR 22-23). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge found that Mrs. Callaway retains sufficient functional ability to perform several specific sedentary work roles existing in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that Mrs. Callaway is not disabled, and that she is not entitled to benefits under

2

either federal program. See generally, 20 C.F.R. §§ 404.1520(g) and 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mrs. Callaway has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. The medical record confirms that Mrs. Callaway suffers from several significant physical problems, including musculoskeletal impairments with surgical residuals, as well as blindness in her left eye. Focusing on plaintiff's lower back problems, the medical record suggests that Mrs. Callaway began suffering from back pain in the late 2000s, with significant exacerbation in early 2010. She was eventually referred to Dr. James M. Vascik, a neurosurgeon, who diagnosed a herniated disc in the lower back and lumbar scoliosis. On July 14, 2010, Dr. Vascik performed a right L5-S1 hemilaminectomy, medial facetectomy, and discectomy for decompression. Dr. Vascik has continued to follow Mrs. Callaway, providing treatment for her surgical residuals. Clearly, for purposes of claims adjudication and

3

assessment of medical opinions, Dr. Vascik qualifies as a treating medical specialist under the provisions of 20 C.F.R. § 404.1527(c) and 416.927(c).

On December 31, 2010, Dr. Vascik completed a medical statement of plaintiff's physical ability for work-related activities. For the most part, Dr. Vascik listed physical findings which are consistent with the performance of a limited range of sedentary work activity. However, in terms of manipulative restrictions, the neurosurgeon indicated that Mrs. Callaway experiences limitations in reaching in all directions, and that she can be expected to reach only on an occasional basis. (TR 395). The neurosurgeon also indicated that plaintiff could never crouch or stoop. (TR 394). Finally, Dr. Vascik opined that Mrs. Callaway could be expected to miss work more than three times per month because of her physical condition. (TR 396).

The Administrative Law Judge determined to give some weight to Dr. Vascik's physical findings. The Law Judge commented as follows:

> As for the opinion evidence, the undersigned gives some weight to the opinion of Dr. Vascik, as he is a specialist in neurosurgery who treated the claimant. However, the undersigned does not agree with Dr. Vascik's opinion that the claimant cannot stoop and would miss three days a month from work as this is not supported by the claimant's treatment history, her activities of daily living, or the records of Dr. Bumgardner (Ex. 9F).
>
> The undersigned notes that medical consultants for the State agency opined the claimant retains the residual functional capacity to lift and carry 10 pounds frequently and 20 pounds occasionally and sit, stand, and or walk for 6 hours of an 8-hour workday with occasional climbing and stooping, limited vision with the left eye and no concentrated exposure to hazards. The undersigned give some weight to the opinion of these consultants as well but finds the claimant's recurrent back pain would limit her to standing and walking for only 4 hours of an 8-hour workday and her complaints of shoulder pain would limit her to frequent but not constant reaching (Exs. 1A, 2A, 5A and 6A).

4

(TR 24). Notably, the Law Judge gave no indication as to what weight he accorded to Dr. Vascik's determination that Mrs. Callaway could be expected to reach only on an occasional basis. Yet, as previously noted, in assessing plaintiff's residual functional capacity, the Law Judge found that plaintiff could engage in "frequent reaching in all directions." (TR 23).

It appears that this discrepancy as to plaintiff's capacity for reaching is of some consequence. At the administrative hearing, the Administrative Law Judge propounded several hypothetical questions to a vocational expert. As for the first hypothetical question, the Law Judge stated as follows:

> Q[ALJ]: Let me ask you, let me ask you a series of hypothetical questions. And for each of these please assume an individual who's a younger individual meaning less than 50 years old who has a limited education and then the unskilled work experience that you just described. Further assume an individual who can lift up to 20 pounds occasionally and 10 pounds frequently; could stand or walk about six hours and sit for up to six hours out of an eight-hour day; who could occasionally climb ladders, ropes, scaffolds, and ramps or stairs; occasionally stoop, occasionally crawl; and could frequently kneel or crouch; someone who needed to avoid concentrated exposure to hazards like moving machinery and heights; and somebody who needed to – who, limited to occupations requiring frequent near acuity, far acuity, depth perception, color vision, and a combination. Based on those limitations, would such an individual be able to perform the claimant's past work?

(TR 56-57). In response, the vocational expert testified that, while Mrs. Callaway would not be able to perform her past work under the hypothetical, she could engage in several alternate, light and sedentary work roles. In terms of the second hypothetical, the hearing transcript documents the following exchange between the Law Judge and the vocational expert:

> Q[ALJ]: Okay. Thanks. Let me ask you a second hypothetical. Let's assume an individual who could lift up to 20 pounds occasionally and 10 pounds frequently; could stand or walk about four hours and sit for up to six hours out of an eight-hour day; who could frequently operate foot controls with their lower extremities

5

| | |
|---|---|
| | but not more than frequently; who could occasionally climb ramps or stairs and occasionally climb ladders, ropes, or scaffolds and kneel and crawl; but could never crouch and could never stoop; someone who could only occasionally reach and overhead reach; and someone who would need at least three unscheduled absences from the workplace each month due to various impairments. Based on those limitations, would there be work in the national or regional economy for such an individual? |
| A[VE]: | No, your honor. Such an individual would not be able to demonstrate regular, sustained, and ongoing precedence for work. The reaching occasionally would significantly eliminate sedentary work which her exertional limits, which are the exertional limits you described, would limit her to. She would not be able to perform any sedentary, unskilled work nor any other work in the national economy. |
| Q: | Okay. Is it accurate to say that, as you just said, the reaching limited to a [sic] occasional is a key limitation that triggers the conclusion of no work available? And how about the unexpected absences? |
| A: | Those two, either one by themselves would preclude substantial, gainful work activity. |

(TR 58-59). When asked a third hypothetical question, which mirrored the second but included capacity for at least frequent reaching and no unscheduled absences, the vocational expert identified several sedentary jobs which Mrs. Callaway could be expected to perform. (TR 59-60).

In short, based on the testimony of the vocational expert, Mrs. Callaway's capacity for reaching is of critical importance in her social security case. Given the finding of her treating neurosurgeon that she is limited to only occasional reaching, and assuming a capacity for no more than sedentary exertion, the vocational expert was unable to identify any job in which plaintiff could be expected to perform. Based on the treatment records of Dr. Vascik, as well as those of plaintiff's family doctor, the court believes that there is evidence to support the Law Judge's finding that Mrs. Callaway could perform regular and sustained work, and that it would not be necessary for her to miss three days a month on an unscheduled basis. However, after reviewing the medical record, the

court finds no evidence to support the Law Judge's determination that Mrs. Callaway could be expected to engage in "frequent reaching in all directions." The only evidence on this critical point is provided by Dr. Vascik, and the Law Judge has offered no reason to support his rejection of Dr. Vascik's opinion that Mrs. Callaway can now be expected to reach on no more than an occasional basis.

On appeal to this court, and in support of her motion for summary judgment, the Commissioner argues that the Law Judge might reasonably rely on other medical evidence of record in assessing plaintiff's residual functional capacity. The Commissioner also notes that Dr. Vascik did not refer to any specific physical findings in support of the determination that Mrs. Callaway's capacity for reaching is now limited. As to the Commissioner's argument that the reports of the state agency physicians, upon whose opinions the Law Judge explicitly relied, do not include notations of limitation in reaching, the simple fact is that the nonexamining state agency doctors were not asked to assess the plaintiff's capacity for reaching.[1] (TR 83-84, 106). More to the point, however, the Law Judge ultimately failed to cite any specific findings or reasons in support of the notion that Mrs. Callaway is now able to engage in "frequent reaching in all directions."

It is well settled that an Administrative Law Judge must explain the weight given to obviously probative evidence, and that the decision of the Law Judge cannot be deemed to be supported by substantial evidence when there is a failure to explain the basis for the decision. See e.g., Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987); Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984); Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977). In such circumstances, the

---

[1] The first state agency physician did note "moderate flexion loss of ROM and major extension loss," though the exact meaning of this limitation is not clear. (TR 81).

7

appropriate course is to remand the case to the Commissioner for a full and complete explanation of the reasons deemed to be in support of the critical finding. Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

For the reasons stated, the court finds "good cause" for remand of this case to the Commissioner for further consideration. An appropriate order will be entered this day. Upon remand, both sides will be allowed to present additional evidence and argument.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER: This 22d day of July, 2014.

_____
Chief United States District Judge